UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESSICA JUNE MANIA,           ) | |
|                               ) | |
|   **Plaintiff,**              ) | |
|                               ) | |
| v.                            ) | Case No. 23-CIV-573-AMG |
|                               ) | |
| MARTIN O'MALLEY,              ) | |
| **Commissioner of Social Security,** ) | |
|                               ) | |
|   **Defendant.**              ) | |

## MEMORANDUM OPINION AND ORDER

Jessica June Mania ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues (Docs. 13, 15, 16).[1] The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 12). Based on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

I.      **Procedural History**

Plaintiff filed applications for DIB and SSI on August 26, 2019, alleging a disability onset date of September 1, 2018. (AR, at 15, 337-45, 346-352). The SSA denied the applications initially and on reconsideration. (*Id*. at 143-51, 152-55, 158-63, 164-67). Then a telephonic administrative hearing was held on October 20, 2021. (*Id*. at 33-76). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 12-32). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.     **The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2018, the alleged onset date. (AR, at 18). At Step Two, the ALJ found that Plaintiff had the following severe impairments: "drug use, major depressive disorder, and attention-deficit hyperactivity disorder." (*Id*.) At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*.) The ALJ then determined that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and detailed instructions and have superficial interaction with the public, coworkers, or supervisors." (*Id*. at 20). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work. (*Id*. at 25). At Step Five, however, the ALJ

found when "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" such as a laundry worker, hand packager, and night cleaner. (*Id*. at 25-26). Thus, the ALJ found that Plaintiff had not been under a disability from September 1, 2018, through the date of the decision. (*Id*. at 26).

**III.    Claims Presented for Judicial Review**

On appeal, Plaintiff raises two issues. First, she argues that "[t]he ALJ applied an incorrect legal standard when she discounted [Plaintiff's] subjective complaints." (Doc. 13, at 2). More specifically, she alleges that the ALJ disregarded Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "'solely because the objective medical evidence does not substantiate' them," thereby improperly increasing Plaintiff's burden of proof. (*Id*. at 3-5) (quoting *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020)). Second, Plaintiff argues that because the ALJ discounted her subjective complaints, the ALJ erred in determining her RFC, specifically by failing to find that Plaintiff had one or more limiting factors that would have precluded work. (*Id*. at 9-13). She further argues that the ALJ erred in failing to discuss a letter that was submitted to supplement the record after Plaintiff's hearing stating that Plaintiff has a diagnosis of Autism Spectrum Disorder. (*Id*. at 12-13).

In response, the Commissioner argues that the ALJ did not rely solely on objective evidence in finding Plaintiff's testimony about her symptoms inconsistent with the record. (Doc. 15, at 8-10). He also argues that the ALJ was not required to expressly discuss Plaintiff's autism diagnosis in determining the RFC. (*Id*. at 10-12).

3

**IV.     The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id*. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is

engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC,")[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

**V.  The ALJ's Analysis of Plaintiff's Mental Symptoms Is Supported By Substantial Evidence.**

   **A.  The SSA's Framework for Analyzing Symptoms**

The Commissioner has a two-step process for evaluating a claimant's symptoms, that is, his or her subjective statements about his or her impairments and limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). At the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms . . . and determine[s] the extent to which [a claimant's] symptoms

limit his or her ability to perform work-related activities." *Id*. at * 4.  In making this evaluation, the ALJ considers the medical evidence of record, along with several factors, including the claimant's activities of daily living. *See id*. at *7.

*James v. Comm'r, SSA*, No. 23-8023, 2024 WL 1133442, at *3 (10th Cir. Mar. 15, 2024).

With regard to the step two of this analysis, the SSA states:

> [i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

Soc. Sec. Ruling ("SSR") 16-3p: <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017).  With respect to consideration of objective medical evidence, the SSA notes that

> [s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . . We must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record.
>
> The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence.
>
> . . .
>
> **However, we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.**[3]  A report of

---

[3] Plaintiff relies heavily on the Fourth Circuit's opinion in *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83 (4th Cir. 2020), to emphasize this guidance.  The reasoning of *Arakas*

7

>   minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.
>
>   If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors set forth in our regulations.

*Id*. at * 5-6 (footnotes omitted) (emphasis added). The SSA specifically acknowledges the usefulness of both treating and non-treating medical sources and their diagnoses, prognoses, and opinions, as well as their records of the claimant's prior statements regarding their symptoms, in evaluating the claimant's currently stated symptoms. *Id*. at *7. The SSA also directs the ALJ to consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other

---

is consistent with the SSA's regulations and guidance but focuses its analysis on the "unique nature of fibromyalgia," for which "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects . . . , based on the current medical understanding of the disease." *Id*. at 95, 97. Thus, the factual analysis of *Arakas* is inapposite here.

symptoms; and (7) any other factors concerning functional limitations and restrictions. *Id.* at \*7-8; *see* 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3).[4]

### B.   The ALJ Conducted an Appropriate Symptom Analysis.

The ALJ found that Plaintiff had the severe impairments of drug use, major depressive disorder, and attention-deficit hyperactivity disorder ("ADHD"). (AR, at 18). As an initial matter, Plaintiff complains that the ALJ ignored a letter submitted post-hearing stating that Plaintiff has a diagnosis of Autism Spectrum Disorder. (Doc. 13, at 9; *see* AR, at 827). To the extent Plaintiff is arguing that based on this letter the ALJ should have found autism to be a severe impairment, the regulations are clear that "[w]e will not use . . . . a diagnosis . . . to establish the existence of an impairment." 20 C.F.R. § 404.1521. Moreover, any error in making this determination would be harmless. In circumstances where an ALJ deems at least one impairment severe and proceeds to the remaining steps of the evaluation, any error at Step Two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at Step Two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Here, the ALJ found three severe impairments and proceeded through the remaining steps of the sequential evaluation. Thus, Plaintiff sustained her burden of proof at Step Two by demonstrating the existence of a

---

[4] The SSA notes that "[i]f there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case. We will discuss the factors pertinent to the evidence of record." *Id*. at \*8.

medically determinable severe impairment, and the ALJ did not commit reversible error in failing to identify any other impairments as "severe."

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," (AR, at 21), and Plaintiff concedes there was no error in that regard. (Doc. 13, at 4). Rather, Plaintiff argues that the ALJ erred in finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR, at 21). Specifically, Plaintiff argues that "the ALJ focused too heavily on the alleged lack of medical evidence as the basis to discount [Plaintiff's] symptoms." (Doc. 13, at 4). Plaintiff points out that the ALJ questioned her about the fact that there was no diagnosis of autism in her medical records, and that the ALJ did not discuss the post-hearing letter stating that Plaintiff had a diagnosis of Autism Spectrum Disorder. (Doc. 13, at 6-8). However, as demonstrated below, the Court finds that the ALJ appropriately considered "the <u>entire</u> case record, <u>including</u> the objective medical evidence," SSR 16-3p, 2017 WL 5180304, at *4 (emphasis added), along with several of the regulatory factors.

The ALJ first extensively summarized Plaintiff's hearing testimony about her symptoms as follows:

> [Plaintiff] stated that she is still unable to work despite her medication, as while she has the aptitude and intelligence to do almost any job, her problem is focusing consistently and keeping the job. She stated that her stress tolerance is such that she sensitive to stimuli and it begins to affect how she sees the world and she becomes irrational. She stated that the medication helps her "quite a bit" but that it is everything around the job that causes her to spiral downward and into an anxious depression. She stated that she has

> had these problems her entire life, adding that she had a hard time making and keeping friends while in school. She stated that she participated in sports in school as well. She indicated that prior to her drug use she had problems with distractibility. She stated that she has a lot of problem with social interaction in person. She admitted to a history of cutting back to age 14, attributing it to anxiety. She stated that she did not seek care until 19 or 20, and that is why she was not diagnosed with autism earlier. She was not able to provide an answer as to why none of her past or current providers have diagnosed her with autism, stating only that she moved around a lot and did not seek care regularly from the same provider.

(*Id*. at 20-21).

Subsequently, the ALJ discussed the objective medical evidence pertaining to Plaintiff's mental health, as recorded by her providers:

> a longitudinal review of the record documents the stability of [Plaintiff's] impairments, especially of late, and as demonstrated by the consistent and largely benign nature of the mental status examinations by treating providers (Exhibits 11F-13F). Indeed, she has been described as fully oriented, with normal thought content, normal speech, and clear and consistent associations. She has been noted to have intact fund of knowledge, including demonstrating awareness of current events and age appropriate vocabulary. Judgement is characterized as fair, memory adequate, sleep good, listening ability alert, and appearance appropriate. She has been described as having an anxious or depressed mood at times. Providers have noted her to have some mild somatic delusions at times (in thought content) and rambling speech on a couple of presentations.

(AR, at 23). Following the SSA's guidance to use the "objective medical evidence [as] a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms," and to "consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3P, 2017 WL 5180304, at *5, the ALJ concluded that Plaintiff's statements were "inconsistent because the record simply fails to

11

document consistent symptoms or related functional limitations which would not be accounted for in the residual functional capacity." (AR, at 23).

Next, the ALJ addressed factors that "precipitate and aggravate" Plaintiff's mental symptoms, SSR 16-3P, 2017 WL 5180304, at *7-8, namely evidence of Plaintiff's daily use of methamphetamine for a year as well as cannabis use.  The ALJ noted that the impartial medical expert, Dr. Valette, stated that the substance use "definitely plays a role" in Plaintiff's mental health, resulting in Plaintiff being given a diagnosis of "stimulant use disorder, severe," and noting that Plaintiff had been "psychiatrically hospitalized, and needed restraints, and there were differential diagnoses, . . . including acute psychotic break, depression, drug withdrawal, [and] drug-induced psychosis."  (AR, at 21).  Dr. Valette opined that the daily meth use might cause Plaintiff to have "cravings that would cause moodiness" but also that the records reflected "her mental statuses were fairly benign . . . although sometimes she is anxious and sometimes she is depressed.  On one occasion she was rambling but the rest of the time she was pretty appropriate."  (*Id*. at 22).

The ALJ addressed Plaintiff's own testimony about her drug use, which was a "measure other than treatment [Plaintiff] uses or has used to relieve [her] symptoms," SSR 16-3P, 2017 WL 5180304, at *7-8:

> [Plaintiff] stated that she started using methamphetamines in the summer of 2018, appropriately [sic].  She stated that she benefited from stimulant medication and had not gotten help in a long time for her mental or behavioral health, and it came into her life.  She stated that she needed to get a job and it calmed her so she could concentrate and focus her mind on what is in front of her, and she becomes present and can complete a task.  She stated that prior to methamphetamine use, in 2013 and 2014, she was prescribed a stimulant medication, Vyvanse, but that after moving to Oklahoma, she was unable to get her prescription medication.

(AR, at 22). Significantly, the ALJ noted that Plaintiff stated

> that she is not using now, and in fact, in July of 2019, she went into a recovery program at City Rescue Mission from August through November of 2019. She stated that since that time, she is doing very well, as in December of 2019, she went to Red Rock and sought mental health treatment, including prescription medication, and that her medication is now optimized to the point that she feels it is beneficial and she is looking to the future.

(*Id*.) The effect of medication and other treatment on Plaintiff's symptoms is also an expressly recognized factor in the symptom analysis. SSR 16-3P, 2017 WL 5180304, at *7-8.

The ALJ also discussed Plaintiff's daily activities, another recognized factor, *see id*., as reported by Plaintiff in a function report:

> [Plaintiff] indicated she takes her medications with reminders, does laundry, drives, goes out alone, shops in stores, handles money and is polite to authority when complaint [sic] with medication. She stated that she also helps care for pets and prepare her own meals daily, as well as assists with household chores. She denied having ever been fired from a job due to problems getting along with others.

(AR, at 23).

The ALJ also considered Dr. Valette's opinions about Plaintiff's paragraph B ratings, the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders, which were formed from both objective medical records and Plaintiff's own function reports:

> [Dr. Valette] rated the "paragraph B" criteria as follows: no limitation in understanding, remembering, or applying information, stating she did not see impairment in this area and that even though she does not drive, she knows how to drive, goes to the store, handles a checkbook, and is described as of average intelligence, adding that comprehension is normal, memory is normal and that while there was one instance in which she was rambling and had preservative thoughts that were somatic in nature, this was not

>consistent; mild limitation in social functioning, as most of the time she is described as cooperative, pleasant, good eye contact, normal mood and affect, sometimes she is described as anxious, depressed, but always appropriate; mild limitation in concentration, persistence or pace, as most of the time her attention span is described as normal and very infrequently is she described as having trouble paying attention; and adaptation, noting the only difficulty in this area is the substance use, but if we take substance abuse out, she does not see impairment. . . . She opined that the claimant would not have any resulting limitations as a result of these impairments.

(*Id*. at 22).

The ALJ further discussed Dr. Valette's opinion that "there is nothing in the record to make her think [Plaintiff] was autistic and further, nothing in a related mental status examination of the same date which would be consistent with autism" even given Plaintiff's "long history of ADHD back to childhood." (*Id*. at 23). Overall, the ALJ found Dr. Valette's testimony and opinions persuasive, while finding the opinions of the state agency psychological consultants – who indicated Plaintiff had "moderate" limitations in the paragraph B functions – to be only partially persuasive. (*Id*. at 24).

Contrary to Plaintiff's insinuations, at no point did the ALJ's opinion indicate that she was relying solely, or even heavily, on the lack of an autism diagnosis to discount Plaintiff's symptoms. The ALJ questioned Plaintiff about the lack of a diagnosis and referenced Dr. Valette's medical opinion that nothing in the record supported such a diagnosis. However, the ALJ extensively weighed Plaintiff's current testimony about her symptoms against the objective medical evidence, which included Plaintiff's prior reports of her symptoms; Plaintiff's activities of daily living; several medical opinions about her mental health and related limitations; and Plaintiff's testimony about her drug use and

14

recovery, as well as the beneficial effect of her medications – all appropriate factors to consider.

Furthermore, the fact that the ALJ did not address the post-hearing letter from Red Rock stating that Plaintiff has a diagnosis of Autism Spectrum Disorder (AR, at 827), does not undermine the ALJ's symptom analysis. The letter provided no additional information about Plaintiff beyond the diagnosis, and that diagnosis alone does not lead to a conclusion that Plaintiff experiences any particular symptoms or limitations. Indeed, as the name of the condition implies, there is a spectrum of more or less severe symptoms associated with autism. The letter was not a "medical opinion" as defined by Social Security regulations because it did not "reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), [or] [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ's decision considered Plaintiff's testimony that she was autistic and that she experienced related symptoms and weighed that testimony against other evidence in the record, as required by the regulations.

In summary, the ALJ did not apply an incorrect legal standard in conducting the symptom analysis. Rather, the ALJ appropriately considered and weighed the relevant factors, and her conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," (AR, at 21), was supported by substantial evidence. Consistency findings are "peculiarly the province of the finder of fact," and courts should

"not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).

## VI. The RFC Is Supported By Substantial Evidence.

Because Plaintiff's argument that the ALJ erred in determining the RFC is premised on the assertion that there was a faulty symptom analysis, (Doc. 13, at 9-11), that argument fails also. The RFC provided that Plaintiff could "perform a full range of work at all exertional levels but with the following nonexertional limitations: she can understand, remember, and carry out simple and detailed instructions and have superficial interaction with the public, coworkers, or supervisors." (AR, at 20). For the same reasons that the symptom analysis is supported by substantial evidence, the RFC is likewise adequately supported. Indeed, the ALJ explained that she included "some [mental] limitations, to account for [Plaintiff's] occasional difficulties, as shown in the documentary evidence and [Plaintiff's] testimony at hearing." (AR, at 24).

Plaintiff argues that "had proper evaluation and consideration of [Plaintiff's] symptoms and autism diagnosis been given, then the only logical finding would have been that at least one (if not all) of the limiting factors applied," (Doc. 13, at 13), namely that Plaintiff would be off task 15% or more of the time, would need additional breaks, or would miss work more than once a month continuously, causing her to be unemployable, according to the VE, (*id*. at 11). Plaintiff is simply asking the Court to reconsider the evidence before the ALJ and reach a different conclusion in order to remand. This Court must decline that request. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (holding that the court will "neither reweigh the evidence nor substitute [its] judgment for that of

the agency") (internal quotation marks omitted); *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("Concluding otherwise would require us to reweigh the evidence, a task we may not perform."). "The ALJ was entitled to resolve [] evidentiary conflicts and did so." *Id*.

### VII. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 1st day of May, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE